(28 Misc. Rep. 502.)

## WALLACE v. ARKELL.

(Supreme Court, Appellate Term. July 26, 1899.)

1. AUTHORITY OF AGENT—EVIDENCE.

Defendant and another, who leased a building together, notified the owner that they did not care to renew the lease, and he leased it to a third person. Afterwards, desiring to renew the lease, the other person, claiming to represent defendant also, purchased a surrender of the lease from the new lessee. When the attorney of the latter sought to collect the purchase price from defendant, he said that he knew about the matter, but that the matters had been conducted by the other person, to whom he had left them. He declined to pay the claim on the ground that it was unreasonable. He also told the lessor's agent that he had left matters in the hands of such other person. *Held* sufficient to go to the jury on the question whether such person had authority to bind defendant.

2. ASSIGNMENTS—SUFFICIENCY TO PASS TITLE.

A writing assigning the "claim against [defendant] and F., amounting to about fifteen hundred ($1,500.00) dollars," is sufficient to transfer title to a claim for the price agreed to be paid for the surrender of a lease, made up of claim for $1,200 against defendant and $300 against F., where those were the only claims the assignor had against such persons.

Appeal from city court of New York, general term.

Action by Ruth A. Wallace against William J. Arkell. From a judgment of the general term (57 N. Y. Supp. 655) affirming a judgment for plaintiff, defendant appeals. Affirmed.

Argued before FREEDMAN, P. J., and MacLEAN and LEVENTRITT, JJ.

Norwood & Dilley (Carlisle Norwood, of counsel), for appellant.
Charles Putzel (August Van Wyck, of counsel), for respondent.

LEVENTRITT, J. The plaintiff, as assignee, sues the defendant to recover the agreed consideration for the surrender of a lease. The defendant denies the making of the agreement, alleging that the person who had assumed to act in his behalf was unauthorized to represent him. Whether there was sufficient evidence to establish the relationship of agency is the sole question involved on this appeal.

The plaintiff was the owner of the premises 449 and 451 West Firty-Third street, of which the defendant and one Louis C. Fuller were the lessees, under a lease expiring May 1, 1896. The premises, though leased to the defendant and Fuller individually, were occupied by a corporation known as Fuller's New Aerated Bread Company. This company was not organized till April, 1895, while the lease had been executed to the defendant and Fuller in February, 1895. Fuller was its president. The defendant had an interest in the business, the nature of which, however, is not disclosed by the record. By the lease the tenants secured the privilege of renewal upon giving to the lessors written notice not later than February 1, 1896. Prior to that date, Fuller, on behalf of the defendant and himself, notified the plaintiff that they would not avail themselves of the option of renewal, but subsequently, having bethought themselves otherwise, wrote, signifying their acceptance of the option. In the meantime, however, the premises had been let to the National Tin-Foil & Bottle-Cap Manufacturing Company. Fuller then called on David Wallace, the husband of the plaintiff, who conducted all negotiations for her, and stated that they (the defendant and himself) had been unsuccessful in securing other quarters, and desired to take advantage of the renewal clause. Wallace informed him that the premises had already been leased to the tin-foil company, but that, if he could adjust matters with them, the plaintiff would consent to a reinstatement of the lease. This led to negotiations with the tin-foil company. In these, Fuller was assisted by a broker named Martin Klenen, through whom he made an offer of $1,200 to the tin-foil company for the surrender of the lease. Ernest L. Kahn, the president of the tin-foil company, insisting on $1,500, Fuller had interviews with him and Wallace to arrange a satisfactory figure. Kahn testifies that, at a meeting held at 167 Wooster street, Fuller said that "he had just left Mr. Arkell, and that he (Mr. Arkell) was not willing to pay the fifteen hundred dollars mentioned, but that he was willing to give twelve hundred dollars, and he said himself that he would not allow the three hundred dollars to stand in the way, and, if necessary, he would pay the three hundred dollars him-

self." These terms were, after several further interviews with Fuller, at none of which the defendant was present, finally accepted by Kahn. Wallace testifies, similarly, that at another meeting, at which Klenen was present, Fuller said, "He came there from Arkell, but that Arkell would not pay any more than twelve hundred dollars, and that he himself would pay the three hundred dollars." This testimony is corroborated by Klenen. The pendency and general nature of these negotiations were known to the defendant. Reference was made to them in a communication addressed and delivered to him by one Holbrook, a clerk of the plaintiff. According to Holbrook's uncontradicted testimony, the defendant, disclaiming all knowledge of the details of the transaction, stated that all these matters were "left   *   *   *   in the hands of Mr. Fuller, and that he [defendant] had made up his mind to ascertain what his liabilities were, and carry them out." While the defendant could, of course, not then have known the precise terms of an arrangement only consummated thereafter, yet these facts, together with Fuller's admission that he consulted the defendant concerning those terms, sufficiently show his acquaintance with the negotiations. After default made in the payment of the $1,500, the attorney for the tin-foil company, who subsequently became plaintiff's attorney, called upon the defendant, in the latter part of May, 1896, to effect collection of the claim. His uncontradicted recital of what occurred is as follows:

"I told him that I represented the National Tin-Foil Company, and wanted to know whether we could not get $1,500 from him, in consideration of the tin-foil company leaving this building, and giving the lease over to him and Mr. Fuller. He told me that he knew about the matter, but that he had got in too deep through Mr. Fuller, but that it was time to call a halt. He said that he had already paid out over $15,000 through the mistakes of Mr. Fuller, and that he could not give me any answer then. Thereupon I stated to him that this lease had been made by the owner, and had been canceled by the consent of the owner and of himself and of Mr. Fuller. I told him that, under the circumstances, the matter could be compromised. Mr. Arkell repeated, in civil language, that he did not know how deep he was in already, nor how much further he would be in (or, as he said, 'caught') through Fuller's mistakes. *   *   *   He said that these matters were conducted entirely by Mr. Fuller, and that he had left them to him."

Though the defendant's attention was called both on his direct and on his cross examination to this testimony of the attorney, he did not question or contradict the accuracy of this recital. While the defendant emphatically denies any authority in Fuller to bind him to the contract, yet his answer at the trial to a question of the plaintiff's attorney, "I did not compromise with you when you were there, because your claim was unreasonable," indicates that he challenged rather the reasonableness than the existence of the claim, which depended upon Fuller's agency. Wallace also testifies that he had a conversation with the defendant relating to the settlement with the tin-foil company. That is also undisputed. Fuller, called as a witness for the defendant, asserts that he had no authority to represent him, and that, notwithstanding Kahn's, Wallace's, and Klenen's testimony to the contrary, he never said that he had the authority. He makes the admission, however, concerning these ne-

gotiations, "I do not wish to deny that I saw Mr. Arkell and consulted him."

On this state of facts, we think the court was required to submit to the jury the question whether Fuller had been empowered by the defendant to bind him to the payment of $1,200 for the surrender of the lease. The declarations of Fuller could, of course, not be invoked to create or prove his agency; but, when facts aliunde established that relationship, he then became the mouthpiece of the defendant, within the limit of his authority. These facts were supplied by the admissions and the omissions of the defendant. When his attention was directed by plaintiff's attorney to the contract made in his name for the surrender of the lease, and when he was advised that through the instrumentality of Fuller an obligation to pay for the surrender had been fastened upon him, he remained silent, and omitted to question Fuller's authority. When it was stated to him that the surrender of the lease was made at the request of himself and others, he accepted, and omitted to impugn the accuracy of the statement. When Wallace spoke to him concerning the settlement with the tin-foil company, he did not disclaim responsibility. His liability was entirely dependent on Fuller's acts, as it is conceded that he did not in person participate in the making of the contract; yet at no time did he evince any surprise at being informed of Fuller's conduct, which, in the event of absence of authorization, would, at the lease, have evoked prompt and emphatic disavowal. The omissions to deny authority in Fuller when he was called upon to speak, if that authority did not exist, considered with certain admissions of the defendant, established a prima facie case. Thus, when the attorney asked "fifteen hundred dollars from him in consideration of the tin-foil company leaving this building, and giving the lease over to him and Mr. Fuller," he replied that he "knew about the matter," and that "these matters were conducted entirely by Mr. Fuller, and that he had left them to him." A similar admission was made to Holbrook prior to the making of the contract. This general disclaimer of knowledge of details, so far from negativing authority in Fuller, rather shows, when taken in connection with the other circumstances, how large Fuller's authority actually was. He declared that Fuller had already involved him in the expenditure of $15,000, and he stated both to the attorney and to Holbrook that he proposed to ascertain the balance of his indefinite liability incurred through Fuller, and liquidate it. On the trial the defendant had ample opportunity to supply and explain his omissions, and to qualify, deny, and explain his admissions. He in no wise availed himself of the opportunity. It cannot be urged that this was through oversight, as his attention was specifically directed to the several interviews and conversations. The former he admitted, and the latter he did not deny. The only reference made by him in the course of his testimony to his interview with the attorney supports the plaintiff's contention. The sole ground there assigned for resisting the claim was its unreasonableness, thus indicating that he did not oppose the claim, but its amount. The demand was for $1,500. His liability was for $1,200. Under those circumstances, he could well

term it "unreasonable," as he apparently knew it to be, from the fact that Fuller had "consulted" him. We are of the opinion that the court properly left it to the jury to find whether or not Fuller had authority to bind the defendant to the contract in question.

The only other ground for reversal urged by the appellant is the indefiniteness of the assignment by the tin-foil company to the plaintiff of its claim against the defendant. Of the two papers introduced in evidence on this branch of the case, we may ignore the first, as the second, executed by the president and secretary of the tin-foil company, assigning the "claim against W. J. Arkell and L. C. Fuller, amounting to about fifteen hundred ($1,500) dollars," is sufficient to transfer the title. There is no pretense that any other claim existed in favor of the tin-foil company, and the aggregate of this claim was manifestly made up of a demand of $1,200 against Arkell and $300 against Fuller. The claim in suit was satisfactorily identified.

We see no reason to disturb the judgment below. It should be affirmed.

FREEDMAN, P. J., concurring.　　MacLEAN, J., taking no part.